Roberto Carlos Ruiz
Correctional No. V01598
CSATF/SP D3-231L
Post Office Box 5242
Corcoran, California,
93212-5242

Petitioner In Pro Se

2254 ✓ 1983
FILING FEE PAID
Yes ___ No ✓
IFP MOTION FILED
Yes ___ No ✓
CONSENT TO
Court ✓ ProSe ___

FILED
JUL 3 0 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Roberto Carlos Ruiz,<br><br>Petitioner,<br><br>vs.<br><br>Ken Clark, Warden,<br><br>Respondent. | Case Number<br>'08 CV 1376 J JMA<br>(To be supplied by Clerk) |

PETITION FOR WRIT OF HABEAS CORPUS BY PERSON IN STATE CUSTODY

CR

# TABLE OF CONTENTS

| | Page(s) |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | iii-viii |
| JURISDICTION | 2 |
| STATEMENT OF THE CASE | 3-4 |
| STATEMENT OF FACTS | 5 |
| ARGUMENTS: | |
| I. THE JOINT RESTITUTION IMPOSITION OF $10,000 AND $1,000 VIOLATE CALIFORNIA PENAL CODE § 1202.4 (C) AND (D), PETITIONER'S LIBERTY INTEREST IN THESE STATUTES AND HIS RIGHT TO DUE PROCESS OF LAW. | 06-12 |
| II. COUNSEL'S PERFORMANCE PRIOR TO, CONTEMPORANEOUS WITH AND SUBSEQUENT TO TRIAL FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS AS TO RENDER IT INEFFECTIVE ASSISTANCE OF TRAIL AND APPEAL COUNSEL | 13-27 |
| A. COUNSEL FAILED TO OBTAIN THE ATTENDANCE OF RELEVANT DEFENSE WITNESSES HE KNEW EXISTED | 13-16 |
| B. TRIAL COUNSEL FAILED TO EFFECTIVELY ADVOCATE PETITIONER'S NEW TRIAL MOTION AND ENGAGE PURSUIT TO THE CALIFORNIA APPELLATE COURTS | 16-17 |
| C. COUNSEL FAILED TO PURSUE ALL INVESTIGATIVE LEADS ESSENTIAL TO PETITIONER'S DEFENSE | 17-21 |

| | | |
|---|---|---|
| D. | COUNSEL FAILED TO OBTAIN INDEPENDENT SCIENTIFIC TESTING OF THE CONDOM WRAPPER AND PHYSICAL EVIDENCE RECOVERED FROM THE VICTIMS ON MAY 01, 2002 | 21-22 |
| E. | COUNSEL FAILED TO USE ALTERNATIVE VEHICLES OF REDRESS UPON THE COURT'S DENIAL OF HIS TIMELY APPLICATION TO CONTINUE THE CASE FOR TRIAL PREPARATION RENDERED HIS ASSISTANCE INEFFECTIVE AS HE PROCEEDED TO TRIAL UNPREPARED AND IRRESPECTIVE OF THE CONSEQUENCES TO PETITIONER | 23-27 |
| III. | THE TRIAL COURT'S ADMISSION OF PREJUDICIAL, CUMULATIVE EVIDENCE AND LATER PERMITTING IT'S WITHDRAWEL DEPRIVED PETITIONER OF HIS FEDERAL CONSTITUTIONAL DUE PROCESS RIGHT TO A FAIR TRIAL, REQUIRING REVERSAL OF PETITIONER'S CONVICTION | 28-29 |
| | CONCLUSION | 30 |
| | VERIFICATION | 30 |
| | PROOF OF SERVICE VIA U.S. MAIL | 31 |

# TABLE OF AUTHORITIES

Page(s)

**State Cases**

In re Brittany L, (2002) 99 Cal. App. 4th 1381, 1391 [122 Cal. Rptr. 376] 10

People v. Amin, (2000) 85 Cal. App. 4th 58 [101 Cal. Rptr. 2d 756] 11

People v. Bauman, (1985) 176 Cal. App. 3d 67, 80 [222 Cal. Rptr. 32] 10

People v. Campbell, (1994) 21 Cal. App. 4th 825 [26 Cal. Rptr. 2d 433] 09

People v. Cervantes, (1984) 154 Cal. App. 3d 353 [210 Cal. Rptr. 187] 10

People v. Draut, (1999) 73 Cal. App. 4th 577 [86 Cal. Rptr. 2d 469] 07

People v. Frye, (1994) 21 Cal. App. 4th 1483 [27 Cal. Rptr. 2d 52] 08,09

People v. Gentry, (1994) 28 Cal. App. 4th 1374, 1376, 1377 [34 Cal. Rptr. 2d 37] 09

People v. Griffin, (1987) 193 Cal. App. 3d 739, 741 [238 Cal. Rptr. 371] 08,09

People v. Hartley, (1984) 163 Cal. App. 3d 126 [209 Cal. Rptr. 131] 10

People v. Moreno, (2003) 108 Cal. App. 4th 1, 9 [132 Cal. Rptr. 2d 918] 11

People v. Saelee, 135 Cal. App. 4th 27 [40 Cal. Rptr. 2d 790] 08

People v. Sandoval, (1989) 206 Cal. App. 3d 1544, 1550 [254 Cal. Rptr. 674] 10

People v. Staley, 10 Cal. App. 4th 482 [12 Cal. Rptr. 2d 816] 09

**Federal Cases**

Argersinger v. Hamlin, (1972) 407 U.S. 25, 40 24

Baldasar v. Illinois, (1980) 446 U.S. 222, 223 24

Brecht v. Abrahamson, (1993) 507 U.S. 619, 637 29

Brewer v. Williams, (1977) 430 U.S. 387, 404 24

Chapman v. California, (1967) 386 U.S. 18, 24 29

Cockett v. Ray, 333 F.3d 938, 944 (9th Cir. 2003) 25

Cunningham v. California, (2007) 549 U.S. _____ 09

Delgado v. Lewis, 223 F.3d 976, 980-982 (9th Cir. 2000) 26

Eslaminia v. v. White, 136 F.3d 1234, 1238 (9th Cir. 1998) 29

Gideon v. Wainwright, (1963) 372 U.S. 335, 342 24

Glover v. U.S., (2001) 531 U.S. 198, 203 24,25,26

Hart v. Gomez, 174 F.3d 1067, 1073 (9th Cir. 1999) 26

Johnson v. Zerbst, (1938) 304 U.S. 458, 463 24

Kimmelman v. Morrison, (1986) 477 U.S. 365, 385 26

Kirby v. Illinois, (1972) 406 U.S. 682, 689 24

Lockhart v. Fretwell, (1993) 506 U.S. 364, 367-368 25,26

McMann v. Richardson, (1970) 397 U.S. 759, 777 n.14 24

Mickens v. Taylor, (2002) 535 U.S. 162, 166 25

Morales v. Woodford, 336 F.3d 1136, 1149 (9th Cir. 2003) 29

Neb. Press Assoc. v. Stuart, (1976) 427 U.S. 539, 555 28

Nix v. Whiteside, (1986) 475 U.S. 157 25

Riggs v. Fairman, 399 F.3d 1179, 1183 (9th Cir. 2005) 25

Roe v. Flores-Ortega, (2000) 528 U.S. 470, 483-484 25

Smith v. Phillips, (1982) 455 U.S. 209, 220 29

Smith v. Robbins, (2000) 528 U.S. 259, 287 25

| | |
|---|---|
| <u>Strickland v. Washington</u>, (1984) 466 U.S. 668, 687 | 24,25 |
| <u>U.S. v. Cronic</u>, (1984) 466 U.S. 648, 659 | 25 |
| <u>U.S. v. ex rel Durso v. Pate</u>, 426 F.2d 1083, 1086 (7th Cir. 1970) | 29 |
| <u>U.S. v. Jimenez Recio</u>, 258 F.3d 1069, 1074 (9th Cir. 2000) | 26 |
| <u>U.S. v. Lawrence</u>, 189 F.3d 838, 848 (9th Cir. 1999) | 08 |
| <u>U.S. v. McCormac</u>, 309 F.3d 623, 626-627 (9th Cir. 2002) | 29 |
| <u>U.S. v. McNeil</u>, 362 F.3d 570, 572 (9th Cir. 2004) | 24 |
| <u>U.S. v. Sablan</u>, 192 F.3d 865, 871 (9th Cir. 1996) | 08 |
| <u>U.S. v. Stevens</u>, 978 F.2d 565, 567-568 (10th Cir. 1992) | 26 |
| <u>Walters v. Maass</u>, 45 F.3d 1355, 1357 (9th Cir. 1995) | 29 |
| <u>Warner v. U.S.</u>, 21 Fed. Appx. 43 (9th Cir.) | 08 |
| <u>Yarborough v. Gentry</u>, (2003) 540 U.S. 1, 4-5 | 25 |

**Statutes**


| | |
|---|---|
| Cal. Pen. Code § 136(c)(1) | 03 |
| Cal. Pen. Code § 211 | 03 |
| Cal. Pen. Code § 212.5 | 03 |
| Cal. Pen. Code § 261(a)(2) | 03 |
| Cal. Pen. Code § 286(c)(2) | 03 |
| Cal. Pen. Code § 286(d) | 03 |
| Cal. Pen. Code § 288A(c)(2)/664 | 03 |
| Cal. Pen. Code § 288A(d) | 03 |
| Cal. Pen. Code § 422 | 03 |
| Cal. Pen. Code § 459 | 03 |
| Cal. Pen. Code § 667.5(b) | 03 |
| Cal. Pen. Code § 1202.4(b) | 06,07,08 |
| Cal. Pen. Code § 1202.4(b)-(e) | 07 |
| Cal. Pen. Code § 1202.4(c) and (d) | 06 |
| Cal. Pen. Code § 1202.4(f)-(k) | 07,11 |
| Cal. Pen. Code § 1202.4(g) | 07 |
| Cal. Pen. Code § 1202.46 | 11 |
| Cal. Pen. Code § 1214(b) | 09 |
| Cal. Pen. Code § 1473 | 02 |
| Cal. Pen. Code § 1475 | 02 |
| Cal. Pen. Code § 2085.5 | 11 |
| Cal. Pen. Code § 12022.3(a) | 03 |
| Cal. Pen. Code § 12022(b)(1) | 03 |
| Cal. Gov. Code §§ 13950-13974.7 | 11 |
| Welf. and Insts. Code § 730.6(p) | 11 |

Cal. Evid. Code § 782 18

Cal. Evid. Code § 1103 18

**United States Constitution**

Fifth Amendment 11,30

Sixth Amendment 24,28,30

Eighth Amendment 11

Fourteenth Amendment 11,30

**Regulations**

Cal. Code of Regs., tit. 15 § 3097 11

FILED
JUL 30 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Roberto Carlos Ruiz, | Case Number |
| Petitioner, | '08 CV 1376 J JMA |
| vs. | (To be supplied by Clerk) |
| Ken Clark, Warden, | |
| Respondent. | |

2254 ✓ 1983
FILING FEE PAID
Yes No ✓
IFP MOTION FILED
Yes No ✓
COPIES SENT TO
Court ✓ ProSe

PETITION FOR WRIT OF HABEAS CORPUS BY PERSON IN STATE CUSTODY

## JURISDICTION

This is a habeas corpus proceeding contesting a state court conviction. This court maintains jurisdiction over this matter under Title 28 U.S.C. § 2254, et. seq.

## STATEMENT OF THE CASE

In an information filed March 18, 2003, petitioner was charged with forcible rape (Ct. 1, California Penal Code ("CPC") § 261(a)(2)), attempted forcible oral copulation (Ct. 2, CPC § 288a(c)(2)/664); sodomy by force (CT. 3, CPC § 286(c)(2); robbery of an inhabited dwelling house (Cts. 4 and 14, CPC §§ 211/212.5); burglary (Ct. 5 CPC § 459); making a criminal threat (Ct. 6, CPC 422); dissuading a witness by force or threat (Ct. 7, CPC § 136 (c)(1); oral copulation by acting in concert (Cts. 8 and 12, CPC § 288a((d); forcible oral copulation (Cts. 9 and 13, CPC § 288a(c)(2); sodomy while acting in concert (Ct. 10, CPC § 286(d); and with sodomy by force (Ct. 11, CPC § 286(c)(2).

With respect to counts 1,2 and 3, petitioner was alleged to had utilized a weapon, to wit, a knife in the commission of these offenses within the meaning of CPC §§12022.3(a) and 12022(b)(1). The people further alleged that petitioner suffered a prior prison term within the ambit and definition of CPC § 667.6(b). Each of the offenses were alleged to had been committed by petitioner on May 01, 2002. With respect to counts 1,2,3,4, and 7 it was alleged the offenses were perpetrated by petitioner against Betty Rowland-Smith. As to counts 8-14, it was alleged that petitioner perpetrated these offenses against Jennie Hayes-Kuhn.

Following jury trial's conclusion on April 01, 2003,

petitioner was adjudicated guilty as charged in counts 1-4, and 6-14 and all enhancement allegations were found to be true. Petitioner was exonerated of count 5. The prior prison term was admitted by petitioner. (CT 147-160, 269).

Petitioner on July 28, 2003, was sentenced to a total aggragate term of 47 years and four months in state prison. (CT 229-231, 273-274; RT 742-747). Additional proponents of petitioner's sentence were two impositions of restitution fines. In the underlying case, petitioner was assessed a restitution fine of $10,000.00. In the case relative to Vehicle Code violations that was tried separately, petitioner was assessed a restitution fine of $1,000.00.

A Notice of Appeal was filed on petitioner's behalf on July 29, 2002. (CT 232-233)

On June 28, 2004, petitioner's direct appeal was affirmed by the California Court of Appeal, Fourth Appellate District in Appeal Number D042650. No Petition for Review was filed with the California Supreme Court. Rather, petitioner filed a collateral petition that was presented to the state high courts prior to the instant petition.

## STATEMENT OF FACTS

Petitioner incorporates by reference, the Statement of Facts contained in the Appellant's Opening Brief filed with the California Court of Appeal, Fourth Appellate District Appeal Number D042650, as if contained herein at full length.

I.

ARGUMENT

**THE JOINT RESTITUTION IMPOSITIONS OF $10,000 AND $1,000 VIOLATE CALIFORNIA PENAL CODE § 1202.4(C) AND (D), PETITIONER'S LIBERTY INTEREST IN THESE STATUTES AND HIS RIGHT TO DUE PROCESS OF LAW.**

In sentencing petitioner to 47 years and 08 months, the court imposed two restitution fines. The first was in case number SCS169864 in which the court imposed a restitution fine of $1,000 pursuant to CPC § 1202.4(b). (RT 753) The second case revealed to be more excessive. In case number SCS171398 the court imposed a second fine of $10,000 pursuant to CPC § 1202.4 (b) and stayed a second fine in each of these cases in these same amounts. (RT 749 and 753).

In imposing these amounts, the court abandoned it's statutory responsibility in making a determination as to petitioner's ability to satisfy the fines and merely stated:

> "[W]ith regard to the fine, defendant is ordered to pay a restitution fine pursuant to Penal Code Section 1202.4, subdivision (b), in the amount of $10,000.00 be paid forthwith or as provided in Penal Code section (sic) 20585. Further, the defendant is ordered to pay an additional restitution fine in addition to 1202.45 in the amount of $10,000 to be stayed unless the defendant's parole is revoked."

Id. at RT 749.

> "[A]nd one last thing. Restitution on case ending 864 [SCS169864] will also be imposed $1,000 pursuant to Penal Code section 1202.4, subdivision (b), to be paid forthwith, or as provided in Penal Code section (sic) 205.5."

Id. at RT 753.

First, a court may order any offender who commits a crime in which the victim suffers an economic loss to pay direct restitution in an amount that fully compensates the victim. The court must make such a direct restitution order unless it finds compelling reasons for not doing so. CPC § 1202.4(f)-(k). In this facet, inability to pay is not a compelling reason for failing to order full restitution. CPC § 1202.4(g); People v. Draut, (1999) 73 Cal. App. 4th 577 [86 Cal. Rptr. 2d 469].

Secondly, a court must also impose a restitution fine payable to the State Restitution Fund. Again, the court need not impose the order if it finds compelling reasons for not doing so. CPC § 1202.4(b)-(e). For a person convicted of a felony the amount of the restitution fine should be set between $200.00 and $10,000; within these bounds an exact amount may be calculated considering the length of the sentence, number of offenses, other circumstances of the crime, and...**the prisoner's ABILITY TO PAY**. CPC § 1202.4(b)-(d).

However, although restitution impositions between $200.00 and $10,000 are lawfully permitted, the remainder favor-

able provisions of the state statutes cannot be ignored. Any imposition of restitution is subject to the defendant's ability to pay. People v. Frye, (1994) 21 Cal. App. 4th 1483 [27 Cal. Rptr. 2d 52]. The ability to pay provisions of subdivision (b) of CPC § 1202.4 is beneficial to petitioner and lawfully entitles petitioner to a hearing on the ability to pay and his future prospects of employment for pay while in prison. People v. Saelee, 135 Cal. App. 4th 27 [40 Cal. Rptr. 2d 790]. The ability to pay is a prerequisite that must be made prior to the court's imposition of any restitution order. United States v. Lawrence, 189 F.3d 838, 848 (9th Cir. 1999). The factual information on which a restitution order is based must appear on record and evince that a court had at it's disposal, all relevant information to base a restitution decision. United States v. Sablan, 192 F.3d 865, 871 (9th Cir. 1996).

The ability to pay must be taken into account of the restitution decision, although this in and of itself cannot be deemed as sufficient grounds as compelling and extraordinary circumstances not to impose restitution, it can indeed be determined and weighed in ascertaining the amount whenever the restitution fine imposed exceeds the statutory minimum. Warner v. United States, 21 Fed. Appx. 43; CPC § 1202.4(c). This is even more so given the fact that at all relevant times of petitioner's proceeding, state law permitted the court to utilize uncharged factors from the past which appear on petitioner's criminal history as aggravating factors to aggravate the restitution amount imposed. People v. Griffin, (1987) 193 Cal. App. 3d 739

741 [238 Cal. Rptr. 371]. Nonetheless, even this may be constitutionally intolerable in light of the U.S. Supreme Court's January 22, 2007, enunciated in Cunningham v. California, 549 U.S. ____ (2007).

The court can however, consider the future prospect of a defendant's ability to satisfy the imposed amount when ascertaining whether or not the ability to pay will ever materialize. People v. Frye, supra; People v. Staley, 10 Cal. App. 4th 482 [12 Cal. Rptr. 2d 816](Finding that a defendant's ability to pay can be based on prison wages and post-prison earnings). People v. Gentry, (1994) 28 Cal. App. 4th 1374, 1376, 1377 [34 Cal. Rptr. 2d 37].

No relevant factors were utilized in imposing the maximum restitution in the first case. In the second Vehicle Code violation, no relevant factors were cited by the court in imposing said case's restitution fine beyond the statutory minimum of $200.00. In neither of these cases did the court consider the prospects of petitioner's past, present and future abilities to satisfy the outrageous amounts.

As a matter of judicial conveniency, court's generally combine sentencing with the statutory required hearing. This hearing on restitution must also be notice upon the defendant in advance of the hearing and can be by way of the probation officer's report. CPC § 1214(b); People v. Campbell, (1994) 21 Cal. App. 4th 825 [26 Cal. Rptr. 2d 433]. At a restitution hearing, a defendant has a right to be heard. Although the probation officer's report may be considered, it cannot be the sole

basis of a restitution order. People v. Hartley, (1984) 163 Cal. App. 3d 126 [209 Cal. Rptr. 131]; People v. Cervantes, (1984) 154 Cal. App. 3d 353 [210 Cal. Rptr. 187].

The amount of restitution must be proven by a preponderance of the evidence. People v. Bauman, (1985) 176 Cal. App. 3d 67, 80 [222 Cal. Rptr. 32]. A defendant has a right to contest the probation officer's report and must be given opportunity to present material to a restitution determination. In re Brittany L., (2002) 99 Cal. App. 4th 1381, 1391 [122 Cal. Rptr. 376]; People v. Sandoval, (1989) 206 Cal. App. 3d 1544, 1550 [254 Cal. Rptr. 674]. A defendant must be given a reasonable and meaningful opportunity to contest a restitution amount. Id.

In the instant case the restitution amount was not demonstrated by preponderance of the evidence nor did this court have at its disposal the requisite financial information to make a competent and sound restitution decision. Obviously the court was not concerned with whether petiitioner had the ability to pay the imposed restitution fines and the evidence further evinces the court was not in possession of any restitution information supportive of the egregious amounts imposed. Namely, in sentencing petitioner this court iterated:

> "[I]f you appeal, and do not have the financial ability to retain services of an attorney to represent you on appeal, the appellate authorities will appoint counsel to represent you in that regard."

Id. at RT 750.

Clearly the court was not knowledgeable as to whether petitioner was capable of satisfying the imposed fine as the court lacked surety as to whether petitioner could retain the services of an appellate counsel.

Under current law, the amount of restitution may be determined at any time after conviction. If the amount cannot be properly determined at the time of sentencing, the court must retain jurisdiction to determine and set the just amount. CPC § 1202.4(f) and 1202.46; People v. Amin, (2000) 85 Cal. App. 4th 58 [101 Cal. Rptr. 2d 756]. Even if the court doesn't retain jurisdiction, the restitution order can be modified at the request of the people, defendant, victim or sua sponte by the court on it's own motion and/or initiative. People v. Moreno, (2003) 108 Cal. App. 4th 1, 9 [132 Cal. Rptr. 2d 918].

Finally, in order for a victim to recover restitution to be deducted from a defendant's prison wages, the victim must timely file an application with the California Government Claims and Victim's Compensation Board. See e.g., CPC § 2085.5 (b); Welf. and Insts. Code § 730.6(p); Cal. Gov. Code §§ 13950 through 13974.7; and, 15 CCR § 3097.

Neither victim in the instant case has diligently filed any application with the CGCVCB to date. As such and given all foregoing reasons, the restitution imposed in any amount in excess of the statutory minimum violates petitioner's constitutional rights under the Fifth, Eighth and Fourteenth Amendments [Due Process guarantee and Excessive Fines prohibition] to the United States Constitution and must be reduced commensurate

with an amount petitioner is able to satisfy.

# II.

## ARGUMENT

**COUNSEL'S PERFORMANCE PRIOR TO, CONTEMPORANEOUS WITH AND SUBSEQUENT TO TRIAL FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS AS TO RENDER IT INEFFECTIVE ASSISTANCE OF TRIAL AND APPEAL COUNSEL.**

Petitioner was convicted of several counts as charged in the accusatory pleadings based proportionately upon the withering testimonies of victim-witness accounts of Betty Rowland-Smith and Jennie Hayes-Kuhn, each who retained ulterior motives to offer deceptive testimony to the court.

Although trial counsel was presented with reasonable leads essential to the defense of petitioner, these leads were rebuffed, ignored and discarded by trial counsel. On appeal, petitioner sought that appellate counsel raise all viable issues, including those of IAC, to no avail. The deficiencies of both counsel which rendered assistance ineffective are noted, infra.

### A. COUNSEL FAILED TO OBTAIN THE ATTENDANCE OF RELEVANT DEFENSE WITNESSES HE KNEW EXISTED.

In the early and pre-trial stages of the underlying criminal proceedings, petitioner conveyed the existence of several relevant defense witnesses to whom petitioner sought to compel at trial to further his defense and corroborate his expected testimony and defense to the trumped-up charges. These conveyances were communicated to counsel for petitioner. Namely, petitioner

conveyed that counsel should pursue the knowledge and/or identities of the following persons bearing first-hand knowledge to the charged events:

1). Mohammed Guvanni;

2). Benny Gomez;

3). Jimmy Callahan; and,

4). James Wesley Jackson.

By the date of March 19, 2003, and prior to the trial in this matter, counsel had not executed any efforts in this respect nor initiate any investigative efforts to ascertain what if any knowledge these potential defense witnesses possessed. Rather, on March 19, 2003, and without the benefit of preparatory investigation, counsel filed defenses witness list consisting of some 21 defense witnesses counsel projected compelling to trial. (CT 53) This in turn, although not advancing an unequivocal impression that counsel was prepared for trial, constructively conveyed to the court and counsel for the people, that petitioners counsel was indeed ready to proceed forth. The witnesses identified by counsel, particularly were as follows:

1). Officers B. Stevens, Gaines, Glover, Carter, S. Schneider, Cruz, Gossett, Demetrio, Witte, D. Edwards, and Sergeant Harris;

2). Technician T. Young, Forensic Intern C. Johnson, Doctor Kaufhold, Doctor Gasza, Registered Nurse Redondo, Agundez, Dario Del Villar Perez, Benny Gomez, Vickye Lynn Stevens and/or Steve Blake. Trial in this action commenced effective March 19, 2003. (CT 247, 249) Of the parties identified by counsel to be called by the defense, Agundez, Demetrio, Glover, Kaufhold, Redondo, Schneider and Young, among others were in fact summoned by the prosecution in his case in chief. (CT 256, 258, 259); and (RT 291, 331, 343, 361, 368, 385 and 402)

The people's case rested on March 24, 2003. (CT 259). On March 25, 2003, trial resumed by counsel for petitioner presenting opening statements and subsequently calling petitioner in his own defense. (CT 260); (RT 425). In compelling petitioner to testify in his own defense, counsel secured absolutely no corroborating defense witnesses nor had counsel explored those material witnesses conveyed to him by petitioner prior to trial. Without the slighest corroboration, counsel on March 26, 2003, after moving all of defenses exhibits into evidence, rested it's case. (CT 262-263); (RT 569-570).

Trial counsel's failures were conveyed subsequent to the trial on direct appeal to appellate counsel as potential viable issues on appeal but were never preserved on appeal by appellate counsel. On March 29, 2007, petitioner through due

diligence sought the client-file from both appellate and trial counsel. Trial counsel on April 23, 2007, produced materials purporting to be the client file in this matter maintained by the office of trial counsel. However and consequently, appellate counsel conveyed no such file existed in his possession.

Upon thorough critique of the materials produced by trial counsel and purporting to be the client file, petitioner discovered absolutely no entries existed affording absolutely any rationale for the trial counsel's tactics and strategies. Although petitioner provided trial counsel sufficient leads to persons retaining first-hand knowledge of the events and who could, but for counsel's omissions and ineffectiveness, have exonerated petitioner, counsel consciously chose not to pursue these credible leads and contact the relevant witnesses to merely ascertain what information they possessed. But for counsels errors on both appeal and during trial, the outcome of the proceedings at trial and/or appellate level would have been resolved differently altering the outcome.

**B. <u>TRIAL COUNSEL FAILED TO EFFECTIVELY ADVOCATE PETITIONER'S NEW TRIAL MOTION AND ENGAGE PURSUIT TO THE CALIFORNIA APPELLATE COURTS</u>.**

Trial in this matter concluded effective April 01, 2003, whereupon the selected jury pronounced judgment of guilt. (CT 268-269); (RT 718-728). This pronouncement of guilt applied to all allegations as alleged with the exception of count 5 (residential burglary).(CT 269); (RT 718-728).

After being privileged to consider and hear all

presented evidence, counsel on July 07, 2003, motioned the trial court for a new trial on the basis of mass and grave inconsistencies in the evidence. (CT 192-213). The motion was brought for hearing on July 28, 2003, considered and was denied by the trial court. (RT 06 and 07 of 07/28/03 transcript); (CT 273). Trial counsel's attacks on the jury verdicts were construed with shock. As basis to deny the motion the court merely commended counsel on the record for his trial performance perceived by the court to be astonishing (RT 07 of 07/28/03 transcript).

Rather than pursuing the arbitrary and inappropriate denial of the new trial motion through alternative and available channels of address, counsel selectively chose to rebuff and abandon any interlocutory available remedies and/or appeals including mandamus, prohibition, etc. Had counsel faithfully pursued all available remedies with zeal as sworn to do, petitioner's interests and substantial constitutional rights to due process and a fair trial would have been protected.

### C. COUNSEL FAILED TO PURSUE ALL INVESTIGATIVE LEADS ESSENTIAL TO PETITIONER'S DEFENSE.

As a component of the May 01, 2002, investigation ensuing at the Early California Motel in room number 405, a bag of personal correspondence from correctional facilities addressed to Mrs Rowland were recovered and delegated Evidence Item Number 14 in the Chula Vista Police Department Laboratory Report (II). On December 16, 2002, the preliminary hearing in this action commenced. (Preliminary transcript dated 12/16/02). It is reasonable to presume that prior to proceeding to the Gerstein hearing,

counsel compelled and received from the people, all relevant copies of the evidence requisite by mandatory discovery statutes. This would have included copies of the correspondences directed to Ms. Rowland by gentlemen incarcerated in out-of-state correctional facilities.

On March 19, 2003, and merely days prior to trial, in limine motions were tentatively decided or addressed by the court. (RT 01-18). Relevant to the instant claim,, counsel indicated to the court and the following transpired:

> The Court:..."Now, there was the--a number of areas that Mr. Daley indicated he might choose to get into. Number one, was some letters to miss Rowland that were correspondence to inmates in prison, and there does seem to be some kind of romatic or sexual content to those, and Mr. Daley indicated that he was not sure at this point whether he wanted to get into those.
>
> If the witness portrays herself as being very stably married and so forth, it may become relevant. And another code section that also applies is Evidence Code 1103, but at this point it appears that Evidence Code section 782 sets out a procedure to follow, if we're going to get into those areas.
>
> So I will leave that up to you, but since they are going to be the first two witnesses, it would behoof us to do that as soon as possible. "
>
> Mr. Daley: "Again, your honor, I didn't anticipate going into that based on the material that I have reviewed unless there's something that causes--as the court pointed out, as we discussed in chambers, by virtue of her testimony on direct or otherwise, the witness may make those types of overtures and characterizations of her stable, marital relationship which was indicated at the preliminary hearing, she has been married for six years.

She volunteered that on her own during the course of her direct testimony as I remember or even perhaps on cross examination. But if there's any indication she is attempting to establish that she's in a very type of relationship and that type of thing as a counter to suggest she doesn't date, go out on dates, correspond or otherwise have other relationships, it would be my position that very well may open the door with regard to what we do in terms of her ongoing contacts with these individuals that are demonstrated in her correspondence, and so that I think that is at least at this point my position on that.

So I don't anticipate filing a motion to get into her sexual history as such, but I did mention it only because the people in their limine motions have raised the issue of these letters and how they may come into play.

Mr. Rice: Your honor, first off, I would disagree with the characterizations of these letters as being of a sexual nature. The writers of these letters are obviously in custody at the time the letters are being written, and to the extent that they are sexual in nature, some of them discuss masterbation, being attracted to new prison guards or correctional officers, that kind of thing.

It isn't what I guess comes to mind when the court advises them in that fashion that there's some kind of fantasy going on between the inmate and the victim he's writing to. In fact, the letters in a number of places talk about meeting friends of the victim, and it's not like these are romantic letters between the two of them.

As I mentioned in chambers, I will put on the records these are all letters written by someone else. There are no responses. Although there is reference to I got your letter and talking about things that are mentioned in previous letters, there is no letter from her to either of these individuals.

So to the extent that they are hearsay, to that extent, I feel fairly confident that Mr. Daley isn't going to produce the writers of these letters in anyway, shape or form about their content. I say that because I they are from Alabama.

Again, I would just like before questions are asked of the witness, if there are going to be any questions, that we have the opportunity to have a hearing and discuss outside the presence of the jury, outside the presence of the witness.

I do believe the witness was somewhat surprised when I told her I had to turn over these letters, her personal letters to the defense, and that they were going to be in any way raised in this case.

The Court: Okay. That seems fair. So Mr. Daley is, after hearing her direct, if you elect to go into those areas, you can raise it to our attention. We can hold a hearing outside the presence of the jury.

Mr. Daley: Yes, your honor."

(RT 03-06 of 03/19/03 transcript).

Prosecution witness Betty Joanne Rowland was thereafter duly sworn and on March 20, 2003, was called by the people as a witness on behalf of the state. (RT 26-162); (CT 252-253, 255). During the people's direct examination of this witness the following transpired:

Q. "Looking at photograph B.2 which has an item in five next to it, there is an item there on the bed. Do you recognize what that is?

A. I see that it's a condom wrapper.

Q. Is that any of your property prior to the arrival of the suspects in your room?

A. Absolutely not. I was married.

Q. So that's not something that was yours?

A. No. That's not something that I would have in my possession ever actually."

As forecasted earlier, Ms. Rowland did indeed elect to bolster her credibility by testifying that she was married, loyal and was totally incapable of infidelity. (RT 79). Upon doing so counsel for petitioner insisted on further in limine motions to be considered. As a result and as earlier mentioned by the court, the court did so. (RT 83-96).

After reviewing the relevant correspondences and considering arguments from both sides, the court denied counsel's motion to utilize the contents of the correspondences based proportionately on the fact that counsel's proffered relevance appeared to be tenuated to any issue presented in the case. (RT 96)

The effects of this ruling directly prejudiced petitioner's defense as credibility was the central issue in this case. Counsel failed to diligently follow early leads and investigate the circumstances upon which Jimmy Callahan and James Wesley Jackson wrote the impounded correspondences and what, if any, relationship they had with Ms. Rowland. Had counsel done so and uncovered impeachment evidence sufficient for judicial admission, the results of trial would have been different.

**D. COUNSEL FAILED TO OBTAIN INDEPENDENT SCIENTIFIC TESTING OF THE CONDOM WRAPPER AND PHYSICAL EVIDENCE RECOVERED FROM THE VICTIMS ON MAY 01, 2002.**

Following the alleged commission of the offense at the Early California Motel, an investigation ensued on May 01, 2002. Akin to the correspondences described above, among other

evidence seized/recoveredwas Item Number 05 which consisted of (1) Lifestyles condom wrapper collected from the bed area of the relevant motel room. (RT 390 and 398) Subsequent to the arrival of officers, both alleged victims were subjected to medical evaluations to detect any injuries and at efforts to preserve any present evidence. As a by-product of these examinations, samples were retrieved from each victim's viginal regions and were evaluated for semen or any other genetics that may indicate sexual contact of petitioner or any other alleged persons with the victims. Although the samples returned inconclusive, they were as a matter of law retained.

The investigatory efforts of counsel preparatory to petitioner's trial were superficial at best and did not entail evaluating the condom wrapper recovered and obtaining independent chemical analysis of the condom and specimens recovered from each of the victims. During the pre-trial interim, counsel failed to seek judicial appointment and funding of a defense investigator. Had counsel done so, all possible defenses available to petitioner would have been explored and all evidence purporting to be against petitioner, subjected to vigorous adversarial testing. Counsel's performance rendered his assistance to petitioner ineffective. No reasonable person would envision counsel's trial and pre-trial conducts as effective when compared to that of an ordinary prudent attorney in practice.

**E. <u>COUNSEL FAILED TO USE ALTERNATIVE VEHICLES OF REDRESS UPON THE COURT'S DENIAL OF HIS TIMELY APPLICATION TO CONTINUE THE CASE FOR TRIAL PREPARATION RENDERED HIS ASSISTANCE INEFFECTIVE AS HE PROCEEDED TO TRIAL UNPREPARED AND IRRESPECTIVE OF THE CONSEQUENCES TO PETITIONER</u>.**

Assuming for the sake of the instant contention that counsel did in fact receive the relevant correspondence within days of trial's commencement, upon the court's denial of his reasonable request for continuance, counsel possessed other alternatives rather than proceeding to trial unprepared.

On the Thursday preceding trial's commencement, counsel and the people examined the materials which were erroneously labeled "Written Material." It was at this time that counsel purportedly discovered the full extent of the correspondences. (RT 86). Counsel purportedly brought a continuance motion to enable him opportunity to follow up on the materials and was denied. (RT 86-87).

Rather than exploring other alternative avenues of redress to ensure the petitioner's right to due process and a fair trial were protected, counsel consciously chose to proceed with the trial irrespective of his lack of preparation for trial. The end results and consequences of this omission are evident. Petitioner was deprived of his ability to put the state's case and evidence through adversarial testing and was denied the ability of trial preparation and of his ability to impeach the star witness for the state.

The Sixth Amendment to the United States Constitution provides that:

> "[I]n all criminal prosecutions, the accused SHALL enjoy the right...to have the Assistance of Counsel for his defense."

This guarantee applies to both federal and state criminal prosecutions in which a defendant is accused of a felony or a misdemeanor if a sentence of incarceration is imposed. Baldasar v. Illinois, (1980) 446 U.S. 222,223; Gideon v. Wainwright, (1963) 372 U.S. 335, 342; Argersinger v. Hamlin, (1972) 407 U.S. 25, 40; and, Glover v. United States, (2001) 531 U.S. 198, 203. This right attaches at critical stages of a criminal prosecution after the initiation of adversarial judicial proceedings. Kirby v. Illinois, (1972) 406 U.S. 682, 689; United States v. McNeil, 362 F.3d 570, 572 (9th Cir. 2004). No formal request for counsel need be made by the accused. Brewer v. Williams, (1977) 430 U.S. 387, 404. If an accused defendant cannot employ his own counsel, the court must appoint one. Gideon, at 342; Johnson v. Zerbst, (1938) 304 U.S. 458, 463.

The assistance guaranteed by the Sixth Amendment, **MUST** be **EFFECTIVE.** McMann v. Richardson, (1970) 397 U.S. 759, 777 n. 14. In the seminal authority Strickland v. Washington, (1984) 466 U.S. 668, 687, the United States Supreme Court ("USSC") established a two-prong test to evaluate ineffective assistance of counsel ("IAC") claims. To obtain reversal under Strickland a defendant must prove that counsel's performance fell below an objective standard of reasonableness and that counsels deficient

performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome in the proceeding. Strickland, at 687; Glover, at 204; and Riggs v. Fairman, 399 F.3d 1179, 1183 (9th Cir. 2005). In considering whether counsel's performance was ineffective under Strickland, the court must consider the totality of the circumstances. Yarborough v. Gentry, (2003) 540 U.S.1, 4-5. Under Strickland there is a strong presumption that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." Yarborough; Cockett v. Ray, 333 F.3d 938, 944 (9th Cir. 2003).

In interpreting the prejudice prong, the USSC has identified a narrow category of cases in which prejudice is presumed. Strickland, at 692; Roe v. Flores-Ortega, 528 U.S. 470, 483-84 (2000); Smith v. Robbins, (2000) 528 U.S. 259, 287; and, U.S. v. Cronic, (1984) 466 U.S. 648, 659. The presumption applies when there has been an "[a]ctual or constructive denial of the assistance of counsel altogether or where there are various kinds of state interference with counsel's assistance. Mickens v. Taylor, (2002) 535 U.S. 162, 166. If prejudice is not presumed, a defendant must demonstrate that counsel's errors were prejudicial and deprived him of a fair trial and/or a trial whose result is reliable. Strickland, at 687; Lockhart v. Fretwell, (1993) 506 U.S. 364, 367-68.

The above burden is generally met by showing that the outcome of the proceeding would have been different but for counsel's errors. Nix v. Whiteside, (1986) 475 U.S. 157. However, in some cases [the instant being a classic example], courts will inquire further to determine whether counsel's ineffective assis-

tance "deprived the defendant of a substantive or procedural right to which the law entitles him." Williams, at 391-393; Lockhart, at 367-368.

Generally, defendants have raised IAC claims concerning professional qualifications (U.S. v. Stevens, 978 F.2d 565, 567-568 (10th Cir. 1992)), counsel's performance before trial (Kimmelman v. Morrison, (1986) 477 U.S. 365, 385), performance during trial (Hart v. Gomez, 174 F.3d 1067, 1073 (9th Cir. 1999)), assistance during sentencing (Glover, at 203-204), and performance on appeal (Degado v. Lewis, 223 F.3d 976, 980-982 (9th Cir. 2000)). As a general rule, IAC claims are usually limited to collateral review and will not ordinarily be considered on direct appeal. U.S. v. Jimenez Recio, 258 F.3d 1069, 1074 (9th Cir. 2000).

A. Counsel's failure to invoke the compulsory process of the court to call those witnesses provided by petitioner or merely investigate their relevancy deprived petitioner of a adequate defense and fair trial and compromised petitioner to rely merely upon his testimony without corroboration from other persons possessing direct knowledge of the case. Had counsel pursued the early leads provided by petitioner he would have discovered the exculpatory value of these uncalled witnesses and would have further enabled petitioner to present a strong defense.

B. Counsel's failure in pursuing the denial of the new trial motion through interlocutory remedies deprived petitioner of due process. Had counsel done so and higher appellate court's applied the mandate of law, the end results would have been different and petitioner would have been provided a trial

that comported with constitutional mandates.

C. Counsel retained an affirmative and continuing duty to prepare for trial and pursue all leads and defenses of petitioner. This included diligently discovering the authors of the stack of correspondence to Ms. Rowland. It was indeed predictable that the case would turn on the credibility of petitioner and his accusers. Said materials, had counsel properly investigated the basis and circumstances upon which the authors of the recovered correspondence met Ms. Rowland, carried great potential to impeach the testimony of Ms. Rowland.

D. Counsel's failure to investigate prior to trial further impacted scientific evidence qualified to impeach the star witnesses's credibility. Had counsel secured scientific testing of those specimens removed from each victim and screened them for chemical agents present in the condom wrapper, he would had discovered that no chemical deposits were detected in the specimens recovered from the victims. This evidence if presented to the jury was capable of influencing their decisions.

E. Upon counsel's purported discovery of the stack of correspondence he motioned for a continuance of trial to enable further investigation. This request was denied and counsel was forced to proceed with petitioner's without being fully prepared. The consequences of doing so are rather apparent. Counsel's failure in challenging the appropriateness of the denial through interlocutory alternatives contributed substantially to petitioner not being provided a fair and impartial trial. The lack of counsel's preparation further deprive petitioner of counsel.

III.

## ARGUMENT

**THE TRIAL COURT'S ADMISSION OF PREJUDICIAL, CUMULATIVE EVIDENCE AND LATER PERMITTING IT'S WITHDRAWEL DEPRIVED PETITIONER OF HIS FEDERAL CONSTITUTIONAL DUE PROCESS RIGHT TO A FAIR TRIAL, REQUIRING REVERSAL OF PETITIONER'S CONVICTION.**

After extended references to petitioner's penis, counsel moved to exclude continuing and previous references to such and further sought that the jury be admonished in accordance. (RT 574-575) The court granted the motion and subsequently admonished the jury. Consequently, the continuing reference to petitioner's penis during his and other witnesses testimony could not be retracted merely by the court's granting counsel's motion and directing the jury to disregard said line of questioning. Namely, once a bell rings it is not possible to unring the bell. The evidence that was later considered to be more prejudicial than probative had already been presented to the jury and caused adverse influence on the trial irrespective of the court's admonishment. Namely, the juror exposure to this prejudicial evidence essentially would cause any reasonable juror of ordinary sensibility to be over sympathetic with the victims to such extent that a fair and impartial trial would be impossible.

The Sixth Amendment of the United States Constitution provides that an individual accused of a crime has a right to trial by an impartial jury. This responsibility is placed upon trial judges to ensure such. Neb. Press Assoc. v. Stuart, (1976) 427

U.S. 539, 555. A claim of jury bias and misconduct are subject to harmless error analysis. Smith v. Phillips, (1982) 455 U.S. 209, 220; Chapman v. California, (1967) 386 U.S. 18, 24. Under Chapman error is harmless only if the jury misconduct or bias did not contribute to the verdict. U.S. v. McCormac, 309 F.3d 623, 626-627 (9th Cir. 2002).

Habeas corpus relief for constitutional trial errors may be granted only if the error "had substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, (1993) 507 U.S. 619, 637; Morales v. Woodford, 336 F.3d. 1136, 1149 (9th Cir. 2003).

A state court's evidentiary ruling can violate federal law if "the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); U.S. ex rel Durso v. Pate, 426 F.2d 1083, 1086 (7th Cir. 1970).

Given that this evidence was admitted in this case centering around credibility, it is plausibly "decisively prejudicial." Eslaminia v. White, 136 F.3d 1234, 1238 (9th Cir. 1998). Petitioner's conviction must therefore be reversed.

## CONCLUSION

For the foregoing reasons petitioner contends that his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated in connection with the underlying trial.

For the foregoing reasons the court should reverse the conviction to provide petitioner a new trial which comports with constitutional mandates and entitlements.

## VERIFICATION

I, **Robert Carlos Ruiz,** declare under penalty of perjury that the foregoing is true and correct, except as to those matters stated on information and belief, to which I believe them to be true.

Date: July 24 2008

By: ______________________
(Robert Carlos Ruiz)
Petitioner In Pro Se

FILED
SAN DIEGO SUPERIOR COURT

JUL 05 2007

CLERK OF THE SUPERIOR COURT
BY ZULMA MIRANDA

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| In the Matter of the Application of<br><br>ROBERTO CARLOS RUIZ,<br><br>Petitioner. | Case No.: HSC 10713; SCS 171398<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Second Petition) |

AFTER REVIEWING THE PETITION FOR WRIT OF HABEAS CORPUS AND THE COURT FILE IN THE ABOVE-REFERENCED MATTER, THE COURT FINDS AS FOLLOWS:

Mr. ROBERTO CARLOS RUIZ (hereinafter "Petitioner") was convicted by jury of forcible rape (Penal Code § 261(a)(2)),[1] two counts of forcible sodomy (§ 286(c)(2)), two counts of first degree robbery (§ 211/215.5(a)), making a criminal threat (§ 422), dissuading a witness by force or threat (§ 136.1(c)(1)), two counts of oral copulation in concert (§ 288a(d)), two

[1] All statutory references are to the Penal Code.

counts of forcible oral copulation (§ 288a(c)(2)), and sodomy while acting in concert (§ 286(d)). The jury found Petitioner personally used a knife in all counts (§§ 12022(b)(1) and 1197.7(c)(23)). In addition, in the convictions for forcible rape, attempted forcible oral copulation, and sodomy of victim Betty R., the jury found that Petition used a deadly weapon, to wit, a knife in violation of § 12022.3(a). Petitioner admitted having served a prior prison term. (§ 667.5(b).) On July 28, 2003, Petitioner was sentenced to prison for 47 years, 4 months.

Petitioner appealed to the Court of Appeal, Fourth Appellate District, Division One, Case No., D042650. The sole argument on appeal was that there was insufficient evidence that Petitioner personally used a deadly weapon during the crimes. The Court of Appeal found substantial evidence to support the jury findings that Petitioner used a knife during the crimes. The appeal was denied in an unpublished opinion. The appeal became final with the filing of the Remittitur on August 31, 2004.

On July 12, 2004, Petitioner filed a petition for writ of habeas corpus with this court ("First Petition"). The Petition alleged that Petitioner was denied effective assistance of counsel because trial defense counsel did not present an adequate defense, made poor strategic decisions, and displayed a reckless disregard for Petitioner's interests. Petitioner argued that trial defense counsel was ineffective in each of the following respects: 1) for failing to request the appointment of a psychiatrist to examine victim Betty R., 2) for failing to seek disclosure of an informant who allegedly provided information relating to the case, 3) for failing to "investigate facts" and sufficiently impeach victim Jennie H. regarding conflicting information about the race of those committing the crimes, and 4) on one occasion counsel called Petitioner a "fucken pervert" and "rapist," and on another occasion counsel had Petitioner read the charges aloud while in the company of other inmates, and as a result Petitioner was assaulted and had to be put in protective custody. The First Petition was denied in an order filed on October 7, 2004.

//

Petitioner thereafter filed a petition for writ of habeas corpus with the Fourth Appellate District, Division One, Case No., D045552. This petition essentially repeated the claims raised and denied in the First Petition. The appellate court denied the petition in an order filed on February 7, 2005.

On June 20, 2007, petitioner filed yet another petition for writ of habeas corpus ("Second Petition"). The Second Petition renews claim of ineffective assistance by both trial and appellate defense counsel. Petitioner also asserts the court improperly imposed restitution fines.

Unless a petitioner can justify the filing of numerous habeas corpus petitions, the reviewing court may summarily deny the current petition in its entirety. (*In re Clark* (1993) 5 Cal.4th 750, 767-75 ["'In this state a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him.'"] (*Id.* [quoting *In re Connor* (1940) 16 Cal.2d 701, 705].) Additionally, the "*Dixon* rule" generally prohibits habeas corpus relief on issues that could have been raised on appeal. (*In re Dixon* (1953) 41 Cal. 2d 756.) As a general rule, habeas corpus cannot serve as a substitute for an appeal, and matters that "could have been, but were not, raised on a timely appeal from a judgment of conviction" are not cognizable on habeas corpus in the absence of special circumstances warranting departure from that rule. (*In re Clark* (1993) 5 Cal.4th 750, 765 [quoting *In re Dixon* (1953) 41 Cal.2d 756, 759]; *In re Walker* (1974) 10 Cal.3d 764, 773.)

//

//

//

//

//

//

//

In the present case, Petitioner fails to explain why issues he desires to raise in the Second Petition were not raised on appeal or in the prior petitions for writ of habeas corpus filed both in this court and the Court of Appeal. The court finds that the Second Petition is untimely, and that Petitioner is attempting to engage in unlawful piecemeal litigation. For the reasons stated, the Second Petition is summarily denied.

Service of this ORDER is ordered on Petitioner.

IT IS SO ORDERED:

Dated: 7/3/07

EDWARD ALLARD
JUDGE OF THE SUPERIOR COURT

The foregoing instrument consisting of 4 page(s) is a full, true and correct copy of the original on file in this office.

SUPERIOR COURT SAN DIEGO COUNTY

Clerk of the San Diego Superior Court
Dated: JUL 0 5 2007
By: Y. Miranda, Deputy

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>☐ CENTRAL COURT, 220 W. BROADWAY, SAN DIEGO, CA 92101-3409<br>☐ FAMILY COURT BUILDING, 1501-55 SIXTH, SAN DIEGO, CA 92101-1946<br>☐ NORTH COUNTY BRANCH, 325 S. MELROSE, VISTA, CA 92083-6627<br>☐ EAST COUNTY COURT, 250 E. MAIN, EL CAJON, CA 92020-3913<br>☒ SOUTH COUNTY DIVISION, 500 THIRD, CHULA VISTA, CA 91910-5694<br>☐ JUVENILE DIVISION, 2851 MEADOW LARK, SAN DIEGO, CA 92123-2792 | FILED<br>SAN DIEGO SUPERIOR COURT<br>JUL 05 2007<br>CLERK OF THE SUPERIOR COURT<br>BY ZULMA MIRANDA |
|---|---|
| PLAINTIFF(S)<br>IN THE MATTER OF THE APPLICATION OF ROBERTO CARLOS RUIZ FOR PETITION OF WRIT OF HABEAS CORPUS . | |
| DEFENDANT(S)<br>SAN DIEGO SUPERIOR COURT | JUDGE Edward Allard<br>DEPT: SUPERIOR COURT |
| CLERK'S CERTIFICATE OF SERVICE BY MAIL<br>( CCP 1013a(4) ) | CASE NUMBER<br>HSC 10713; SCS 171398 (Second Petition) |

I, **Michael Roddy,** certify that: I am not a party to the above-entitled case; that on the date shown below, I served the following documents:

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS.

on the parties shown below by placing a true copy in a separate envelope, addressed as shown below; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at:
☐ San Diego ☐ Vista ☐ El Cajon ☒ Chula Vista, California.

NAME(S) & ADDRESS(ES):

**Roberto Carlos Ruiz**
**V-01598**
**CSATF/ SP D3-231**
**P. O. BOX 5242**
**Corcoran, CA. 93212-5242**

**CLERK OF THE SUPERIOR COURT**

Date: July 5, 2007

By: Z. Miranda, Deputy

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

**S159245**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re ROBERT CARLOS RUIZ on Habeas Corpus

---

The petition for writ of habeas corpus is denied. (See *In re Clark* (1993) 5 Cal.4th 750; *In re Robbins* (1998) 18 Cal.4th 770, 780.)

SUPREME COURT
**FILED**

JUN 1 1 2008

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

JS44

(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

2254 / 1983

FILING FEE PAID Yes No ✓

IFP MOTION FILED Yes No ✓

COPIES SENT TO Court ✓ ProSe

FILED JUL 30 2008 CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA BY DEPUTY

**I (a) PLAINTIFFS**

**Roberto Carlos Ruiz**

**DEFENDANTS**

**Ken Clark**

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Kings
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
**(IN U.S. PLAINTIFF CASES ONLY)**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

**Roberto Carlos Ruiz**
**PO Box 5242**
**Corcoran, CA 93212**
**V-01598**

**ATTORNEYS (IF KNOWN)**

**'08 CV 1376 J JMA**

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX (For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

**28 U.S.C. 2254**

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

**CONTRACT**
- ☐ 110 Insurance
- ☐ Marine
- ☐ Miller Act
- ☐ Negotiable Instrument
- ☐ 150 Recovery of Overpayment &Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153Recovery of Overpayment of Veterans Benefits
- ☐ 160 Stockholders Suits
- ☐ Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectmant
- ☐ 240 Tort to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury- Medical Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☒ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710Fair Labor Standards Act
- 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc.
- ☐ Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (13958)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reappointment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities Exchange
- ☐ 875 Customer Challenge 12 USC
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State
- ☐ 890 Other Statutory Actions

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding ☐ 2 Removal from State Court ☐ 3 Remanded from Appelate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 **DEMAND $**

Check YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE Docket Number

DATE 7/30/2008 ~~SIGNATURE OF ATTORNEY OF RECORD~~

RMiller

CR